**William E. BROCK, Secretary of Labor, Petitioner,**

v.

**DUN–PAR ENGINEERED FORM COMPANY, and Occupational Safety & Health Review Commission, Respondents.**

**No. 86–2365.**

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 10, 1987.

Decided April 6, 1988.

Laura V. Fargas, Washington, D.C., for petitioner.

Thomas M. Moore, Kansas City, Mo., for respondents.

Before McMILLIAN, ARNOLD and BOWMAN, Circuit Judges.

McMILLIAN, Circuit Judge.

William E. Brock, Secretary of Labor (the Secretary), appeals from an order of the Occupational Safety and Health Review Commission (the Commission) vacating a citation against Dun–Par Engineered Form

Co. (Dun–Par) for a serious violation of 29 C.F.R. § 1926.500(d)(1) [1] (failure to provide a guard rail at the perimeter of open-sided floors). Before the Commission, Dun–Par asserted the affirmative defense of impossibility; it argued that guard rails were not possible and that there were no alternative measures of compliance available. While the Commission was satisfied that guard rails were infeasible, it did not pass on the second aspect of Dun–Par's asserted defense. Rather, the Commission held that the Secretary had the burden of demonstrating that alternative measures of compliance were available and that the Secretary had failed to carry this burden. For reversal, the Secretary argues that the Commission erred in shifting to the Secretary the burden of proving that alternative measures of compliance were available. For the reasons discussed below, we reverse and remand to the Commission for a determination of whether Dun–Par has met its burden of demonstrating that alternative means of compliance were not available.

*Background*

In May 1979, in response to a complaint that an employee had fallen from the perimeter of a sixth floor worksite, a compliance officer of the Occupational Safety and Health Administration (OSHA) inspected a multi-story construction project in Excelsior Springs, Missouri, where Dun–Par was performing concrete formwork. Concrete formwork is the process by which the structural framework of a building is formed. A wooden formwork is erected and then filled with concrete. After the concrete hardens, the wooden mold is then torn away. The process moves upward, floor by floor, although the wooden formwork for the next floor cannot be erected until the concrete for the previous floor has hardened. At the time of the inspection, the building was partially constructed to the sixth floor. Dun–Par's employees were working on the fifth and sixth floors of the project, where there was no perimeter protection of any kind. A fall from either of the floors would result in probable death.

Following the inspection, OSHA issued citations to Dun–Par charging various repeated and non-serious violations of the Occupational Safety and Health Act of 1970 (the Act), 29 U.S.C. §§ 651–678, including a repeated violation of 29 C.F.R. § 1926.500(d)(1), by failing to provide perimeter guardrails on the fifth and sixth floors of the construction site. The Secretary later amended his citation to allege, in the alternative, that Dun–Par should have protected its employees against perimeter falls by providing them with safety belts under the personal protective equipment standard set forth at 29 C.F.R. § 1926.28(a). [2]

At a hearing before an Administrative Law Judge (ALJ), Dun–Par asserted the defense of impossibility. Under this defense, Dun–Par was required to demonstrate (a) that compliance with the guardrail standard's literal requirements was not possible or would preclude performance of Dun–Par's work, *e.g., Bratton Furniture Manufacturing Co.*, 11 O.S.H.Cas. (BNA) 1433, 1434–35, (O.S.H.Rev.Comm'n 1983), and (b) that Dun–Par used alternative means of protection not specified in the standard, or that alternative means of protection were unavailable. *Id.* The ALJ rejected Dun–Par's offered defense, concluding that "[g]uardrails, cables, catch platforms, outriggers and nets, and safety belts" were all feasible methods of protecting Dun–Par's employees from the un-

---

**1.** 29 C.F.R. § 1926.500(d)(1) provides:

*Every open-sided floor or platform 6 feet or more above adjacent floor or ground level shall be guarded by a standard railing, or the equivalent, as specified in paragraph (f)(1)(i) of this section, on all open sides, except where there is entrance to a ramp, stairway, or fixed ladder. The railing shall be provided with a standard toeboard wherever, beneath the open sides, persons can pass, or there is mov-*

ing machinery, or there is equipment with which falling materials could create a hazard.

**2.** 29 C.F.R. § 1926.28(a) provides:

The employer is responsible for requiring the wearing of appropriate personal protective equipment in all operations where there is an exposure to hazardous conditions or where *this part indicates the need for using such* equipment to reduce the hazards to the employees.

guarded perimeters of the floors under construction. *Dun–Par Engineered Form Co.*, 12 O.S.H.Cas. (BNA) 1949, 1950 (O.S. H.Rev.Comm'n 1986) (*Dun–Par*) (*quoting* the unpublished opinion of the ALJ). The ALJ affirmed the citation for the violation of 29 C.F.R. § 1926.500(d)(1), but characterized it as a serious rather than a repeated violation. The ALJ assessed a penalty of $1,620.00 for the violation.

The Commission reversed the ALJ's decision,[3] concluding that Dun–Par had successfully demonstrated its affirmative defense of impossibility. The Commission began by reinterpreting the first element of the impossibility defense, and concluded that it would be satisfied by a showing by the employer that compliance with the standard was "infeasible." *Dun–Par*, 12 O.S. H.Cas. (BNA) at 1956. The Commission then turned to the second element of the defense and reallocated the burden of proof as to the infeasibility of alternative methods of compliance. *Id.* at 1957. While prior to this case the employer had been required to prove both elements of its affirmative defense, the Commission concluded that "the burden of proposing alternative means of protection and persuading the trier of fact that the employer failed to use them more fairly rests with the Secretary." *Id.* The Commission then applied its newly reformulated infeasibility defense, and concluded that Dun–Par had established the infeasibility of guardrails, while the Secretary had failed to carry its burden of demonstrating the feasibility of alternative methods of compliance. *Id.* at 1960.

*The Standard of Review*

In this appeal, the Secretary concedes the correctness of the Commission's finding that Dun–Par established the infeasibility of the guardrails.[4] Rather, the Secre-

tary challenges the Commission's reallocation of the burden of demonstrating the feasibility of alternative means of compliance to the Secretary.

 This issue raises a question of law, and we accordingly review the Commission's ruling to determine whether it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). We note, however, that the Commission's reinterpretation of the impossibility defense is owed no special deference, because "it is the Secretary, not the Commission, who exercises policymaking and prosecutorial authority under the Act." *Brock v. Chicago Zoological Society*, 820 F.2d 909, 912 (7th Cir. 1987), *citing* 29 U.S.C. § 655. The Commission is particularly entitled to a lesser degree of deference where, as here, it has reversed its long established precedent. *Natural Resources Defense Council v. EPA*, 790 F.2d 289, 298 (3d Cir.1986). As the Supreme Court has said, "[a] 'settled course of behavior embodies the agency's informed judgment that, by pursuing that course, it will carry out the policies committed to it by Congress. There is, then, at least a presumption that those policies will be carried out best if the settled rule is adhered to.' " *Motor Vehicle Manufacturers Ass'n v. State Farm Mutual Life Insurance Co.*, 463 U.S. 29, 41–42, 103 S.Ct. 2856, 2866, 77 L.Ed.2d 443 (1983), *quoting Atchison, T. & S.F.R. Co. v. Wichita Bd. of Trade*, 412 U.S. 800, 807–08, 93 S.Ct. 2367, 2374–75, 37 L.Ed.2d 350 (1973); *see also State Farm Mutual Automobile Insurance Co. v. DOT*, 680 F.2d 206, 220 (D.C.Cir.1982) ("[S]harp changes of agency course constitute 'danger signals' to which a reviewing court must be alert."). While the Commission may change its position, it

---

**3.** When Dun–Par first petitioned the Commission to review the ALJ's decision, the Commission granted review only as to the correctness of the penalty, and remanded to the ALJ for adjustment of the penalty in light of the statutory maximum fine of $1,000.00 for a serious violation. *Dun–Par Engineered Form Co.*, 11 O.S.H. Cas. (BNA) 1912, 1913 (O.S.H.Rev.Comm'n 1984). On remand the ALJ reduced the penalty to $1,000.00 and Dun–Par again petitioned the Commission for review of the ALJ's entire deci-

sion. The Commission then granted the petition to review the entire decision of the ALJ. The Commission's full review of the ALJ decision is now before this court.

**4.** The Secretary similarly does not challenge the Commission's decision to characterize the first element of the impossibility defense as requiring a showing of "infeasibility."

must give adequate reasons for doing so. *See Donovan v. Adams Steel Erection, Inc.,* 766 F.2d 804, 807 (3d Cir.1985) ("It is settled that where an agency departs from established precedent without announcing a principled reason for such a reversal, its action is arbitrary, and an abuse of discretion, and should be reversed.") (citations omitted); *see also Local 777, Democratic Union Organizing Committee v. NLRB,* 603 F.2d 862, 872, 882 (D.C.Cir.1978). We find the Commission's reasons for shifting to the Secretary the burden of proving part of an employer's affirmative defense to be inadequate.

### Litigation Problems for the Employer

 The Commission's first reason for placing the burden on the Secretary to prove part of the employer's infeasibility defense stemmed from the Commission's concern that forcing the employer to prove its own defense would pose "almost insoluble litigating problems for the employer." *Dun–Par,* 12 O.S.H.Cas. (BNA) at 1957. The Commission was moved to sympathy for the employer because, in the Commission's view,

> he could never know when he had proven the unavailability of all the alternative measures that could possibly exist. The employer would have to conceive of all possible alternative measures.... Still, the employer could never know for certain that he had prepared his defense adequately, that he had addressed all possible alternative measures. Others might occur to the Secretary, the judge or the Commission that the employer might not have anticipated no matter how diligent or imaginative his preparation for the hearing.

*Id.*

We believe that the Commission's concerns reflect a lapse in appreciation for the protective purposes of the Act; a lapse which led the Commission to focus on the wrong question. The Act was intended "to assure so far as possible every working man and woman in the Nation safe and healthful working conditions and to preserve our human resources." 29 U.S.C.

§ 651(b) (West 1985). As we have repeatedly stated, the Act was not intended to be remedial so much as to "prevent the first injury, including those of a non-serious nature." *Arkansas–Best Freight System v. OSHRC,* 529 F.2d 649, 653 (8th Cir.1976); *See also Brennan v. OSHRC,* 494 F.2d 460, 463 (8th Cir.1974).

The Commission failed to give the proper weight to the protective purposes of the Act when it focused on the hardships to the employer in preparing for a Commission hearing, rather than looking to the earlier conduct of the employer in its duty to take all available steps to protect its employees in the first instance. Congress has made it clear that "[f]inal responsibility for compliance with the requirements of this act remains with the employer." Staff of 91st Congress, 2d Sess., Legislative History of the Occupational Safety and Health Act of 1970, at 151 (Comm. Print 1971); *see also National Realty Construction Co. v. OSHRC,* 489 F.2d 1257, 1260–61, 1266 n. 37 (D.C.Cir.1973). In our view, if an employer has carried out its affirmative duty under the Act to take all available measures to protect its employees, then it should pose little additional hardship on the employer to show that alternative measures of protection were unavailable or infeasible. Indeed, it is the legal burden on the employer to make such a demonstration that provides a critical incentive for employers to faithfully carry out their duty to protect employees by all possible means. Only the employer who has not conscientiously considered the alternative means of protection, as required by the Act, could suffer the hardships perceived by the Commission. Because the Commission's sympathies are misplaced, we find no support for the Commission's ruling in the difficulties faced by a neglectful employer in preparing its defense.

### The Greater Knowledge of the Secretary

 The second reason offered by the Commission for shifting the burden to the Secretary to prove part of the employer's affirmative defense is that the Secretary has greater knowledge than the employer

of what means of protection might be available. The Commission reasoned that

[a]n employer is not always aware of the many alternative means of protection, particularly if the alternative means of protection are not commonly used in the employer's industry. Knowledge of the various alternative means of protection is more likely to reside with the compliance officer and other employees of the Occupational Safety and Health Administration. The employer does not on balance have any peculiar knowledge concerning alternative means of protection and may indeed have less knowledge than OSHA of such matters.

*Dun–Par*, 12 O.S.H.Cas. (BNA) at 1957. This holding by the Commission, however, equally loses sight of the ultimate allocation of responsibility for employee safety to the employer under the Act. The employer bears the initial responsibility to comply with the standards promulgated by the Secretary. Where the employer determines that the specified means of compliance is infeasible, it must affirmatively investigate alternative measures of preventing the hazard, and actually implement such alternative measures, to the extent feasible. *Cleveland Consolidated v. OSHRC*, 649 F.2d 1160, 1166 n. 11 (5th Cir. Unit B 1981). An employer experienced in performing this duty adequately should possess knowledge of the alternative means of compliance existing in the industry. To the extent that the employer requires further assistance in discovering alternative means of protecting its employees, it may look to the OSHA standards themselves. These standards set forth several alternative means of providing the fall protection needed in this case. *See, e.g.*, 29 C.F.R. §§ 1926.104, .105, .451, .750. The standards are, of course, equally available to both employer and compliance officer.

To permit the employer to evade its responsibility under the Act by, in effect, pleading ignorance, would in our view thwart the clear protective purposes of the Act. The Act imposes an obligation on employers to become aware of, and to actually implement, alternative means of compliance where feasible. The Commission's

decision to relieve the employer, due to lack of knowledge, of its obligation to prove compliance with its duties under the Act is contrary to law.

*Analogy to Enforcement Actions Under Other Regulations*

The Commission lastly justified shifting the burden to the Secretary to prove the availability of alternative means of compliance by analogy to enforcement actions under the general duty clause of the Act, 29 U.S.C. § 654(a)(1), or generalized standards that do not specify the means of abatement. In enforcement actions under these types of regulations, the Secretary is obliged to set forth the contours of these standards at a hearing to cure any potential vagueness difficulties. The Commission reasoned that "once the employer has proven the infeasibility of the specific means of abatement imposed by or described by a standard, the situation is similar to one in which a standard or statute prescribes none at all." *Dun–Par*, 12 O.S. H.Cas. (BNA) at 1958.

The analogy, however, is peculiarly inapposite to the facts of this case. Dun–Par, unlike an employer cited under the general duty clause or a non-specification standard, had precise notice of the hazard to be avoided—employees falling from an unguarded perimeter. The fact that the specified means of abatement, guardrails, were infeasible, did not leave Dun–Par without guidance in performing its substantive duty to employ all feasible alternative means of abatement. Many regulations in 29 C.F.R. pt. 1926 address fall hazards. For example, § 1926.105 mentions safety belts, catch platforms and outriggers, and safety nets—the very means identified by the compliance officer—as appropriate methods of fall protection. *See also* 29 C.F.R. §§ 1926.104, .451, .750. As with the Commission's first two reasons for shifting the burden of proof, we likewise reject the Commission's third rationale as insufficiently supportive of the Act's overall scheme of placing the final responsibility for compliance upon the employer. Although the Commission asserts that its reallocation of the burden of proof does not

dilute the protections of the Act, we are unconvinced. We believe that when determining the feasibility of various means of compliance, the placement of the burden of proof may often be outcome determinative. *See Atlantic & Gulf Stevedores v. OSHRC,* 534 F.2d 541, 552 n. 13 (3d Cir. 1976) ("We recognize that in dealing with difficult and complex problems of economic and technological feasibility, the placement of the burden of proof may well be determinative of the question of validity.").

Accordingly, we reverse the Commission's decision and remand the case to the Commission for a determination of whether Dun–Par has met its burden of demonstrating that alternative means of compliance were unavailable.