BROOKS v. AUSTIN BERRYHILL FABRICATORS

[102 N.C. App. 212 (1991)]

JOHN C. BROOKS, COMMISSIONER OF LABOR FOR NORTH CAROLINA, COM-
PLAINANT v. AUSTIN BERRYHILL FABRICATORS, INC., RESPONDENT

No. 9010SC158

(Filed 19 March 1991)

1. **Master and Servant § 114 (NCI3d) — OSHA proceeding — proof of defense of impossibility**

In proving the defense of impossibility in an OSHA pro-
ceeding, the employer must show (1) that compliance with
the standard was not possible or would preclude performance
of the work and (2) that the employer used alternative means
of protection not specified in the standard or that alternative
means of protection were unavailable.

**Am Jur 2d, Plant and Job Safety — OSHA and State Laws
§§ 33, 42.**

2. **Master and Servant § 114 (NCI3d) — OSHA proceeding —
impossibility defense — economic infeasibility**

An employer's burden of proving the impossibility defense
for its failure to provide guards on press brakes is not met
by showing that the press brakes are used in custom work
rather than production work, that use of the guards is difficult,
expensive, and would require changes in modes of production,
or that the guarding devices would slow down or impede the
production rate. In order to establish impossibility based on
economic infeasibility, the employer must show that the safety
devices are extremely costly and that such costs would finan-
cially imperil the employer's existence.

**Am Jur 2d, Plant and Job Safety — OSHA and State Laws
§§ 33, 42.**

3. **Master and Servant § 114 (NCI3d) — OSHA proceeding — failure
to comply with safety regulations — impossibility defense —
evidence insufficient**

A decision by the OSHA Review Board that it was
technologically and economically feasible to place guards on
points of operation of three press brakes in respondent's custom
metal fabrication shop and that respondent failed to prove
the defense of impossibility was supported by substantial
evidence where the complainant presented expert testimony

BROOKS v. AUSTIN BERRYHILL FABRICATORS

[102 N.C. App. 212 (1991)]

that five types of safety guards and other protective devices had effectively been installed in other custom metal fabrication shops and were available for use in respondent's shop; a part owner of respondent testified that respondent had never sought a variance, consulted experts in machine guarding or alternative means of protection, or tried to use any of the suggested devices; conclusory testimony by two witnesses that guarding the press brakes would put respondent "out of business" and "at a noncompetitive basis" was insufficient to establish economic infeasibility; and testimony by two witnesses for respondent that it was impossible to guard the press brakes was adequately refuted.

    **Am Jur 2d, Plant and Job Safety — OSHA and State Laws § 138.**

APPEAL by respondent from judgment entered 22 April 1988 by *Judge Donald W. Stephens* in WAKE County Superior Court. Heard in the Court of Appeals 18 September 1990.

This is an appeal from the judgment of the superior court affirming the decision of the OSHA Review Board reversing an OSHA hearing examiner and reinstating an OSHA citation and penalty against respondent Austin Berryhill Fabricators.

On 12 May 1981, Art Willis, a safety officer of the North Carolina Department of Labor, OSHA Division, inspected Austin Berryhill Fabricators' (hereinafter ABF) plant near Greensboro, North Carolina. During the inspection, Willis observed in the forming area of ABF's plant three unguarded press brakes: a 75-ton Wisconsin Forcemaster CL 211 press brake; a Chicago 55-ton Dreis and Krump press brake; and a Chicago 25-ton Dreis and Krump press brake. As a result of his inspection, Willis recommended that ABF be issued a citation setting forth both serious and non-serious alleged occupational safety and health violations. James Hall, Chief of Enforcement Services Bureau of OSHA Division, subsequently issued the citations. Citation Number One alleged serious violations for the following items: item number 1 for violation of 29 CFR 1910.212(a)(3)(ii) for not properly guarding points of operation of the three press brakes; item number 2 for violation of 29 CFR 1910.107(b)(10) for not effectively isolating the spraying area from the area in which the lighting units were located; and item number 3 for violation of 29 CFR 1910.219(e)(3)(i) for not enclos-

ing by guards a V-belt drive on an 18-gauge Lockformer, a Pexto powered roller and a flat-belt sanding machine. Citation Number Two alleged nonserious violations.

After receiving the citations, ABF filed a notice of protest to the OSHA Review Board for Citation Number One, item number 1 and the proposed penalties to Citation Number One, items numbers 1, 2, and 3. Citation One, item number 2 was deleted in an amended citation. Commissioner Brooks filed a complaint requesting that the Review Board affirm the citation and assess appropriate penalties. In its answer, ABF denied the alleged violations. The issues presented to the Review Board were: "(a) Did Respondent establish by the greater weight of the evidence that providing a guard at the point of operation of three press brakes was impossible under the facts and circumstances presented? (b) Was a penalty of $200.00 for violation of 29 CFR 1910.219(e)(3)(i) just and reasonable under the facts and circumstances of this case?" After a hearing, the Hearing Examiner first concluded that the proposed penalty for Citation Number One, item number 3 was just and reasonable under the circumstances and affirmed the penalty. ABF did not appeal from this ruling. Second, with respect to the serious violation alleged in Citation Number One, item number 1, the Hearing Examiner concluded that ABF had proven by the greater weight of the evidence that "under the facts and circumstances of this case it was impossible with existing technology to guard the points of operation of three press brakes in question because of the numerous sizes of pieces of metal fabricated and the number of bends required to be made due to the custom nature of Respondent's business and further, that there were no available alternative protective measures that could be used." The Hearing Examiner dismissed the citation for not guarding points of operation on the press brakes.

Commissioner Brooks then petitioned the Safety and Health Review Board of North Carolina (hereinafter Review Board) for review of the Hearing Examiner's dismissal of Citation Number One, item number 1. The Review Board reversed the Hearing Examiner's decision but granted ABF leave to seek a permanent variance from the standard. ABF applied for a permanent variance and the application was denied by Commissioner Brooks. ABF then filed a motion for hearing prior to entry of final order. Following a nonevidentiary hearing, the Review Board entered its final order reversing the Hearing Examiner. ABF then petitioned pursuant to G.S. 150B-43 for judicial review in superior court. After a hearing

the trial court entered judgment on 22 April 1988 affirming the decision of the Review Board. Respondent appeals.

*Attorney General Lacy H. Thornburg, by Ralf F. Haskell, for complainant-appellee.*

*Tuggle Duggins Meschan & Elrod, P.A., by Rayford K. Adams, III, for respondent-appellant.*

EAGLES, Judge.

Respondent brings forth five assignments of error. First, respondent contends that the trial court erred in holding that the Review Board's decision did not prejudice its substantial rights. Second, respondent contends that the trial court erred in affirming the Review Board's decision as to the impossibility defense since the Review Board's decision was based on an error of law. Third, respondent contends that based on the entire record the trial court erred in affirming the Review Board's decision. Fourth, respondent contends that the trial court erred in affirming the Review Board's decision because the decision was contrary to the findings of fact made by the Review Board and omitted uncontroverted findings of fact by the hearing examiner. Finally, respondent contends that it proved the defense of impossibility by a preponderance of the evidence.

Initially we note that judicial review of OSHA Review Board decisions is under the Administrative Procedure Act (Article 4 of Chapter 150B). G.S. 95-141. The whole record test is applicable to judicial review under the Administrative Procedure Act. *In re Appeal of K-Mart Corp.*, 319 N.C. 378, 354 S.E.2d 468 (1987). "This Court is bound by the findings of the [reviewing body] if they are supported by competent, material, and substantial evidence in view of the entire record as submitted." *Id.* at 380, 354 S.E.2d at 469. G.S. 150B-51(b) provides that

the court reviewing a final decision may affirm the decision of the agency or remand the case for further proceedings. It may also reverse or modify the agency's decision if the substantial rights of the petitioners may have been prejudiced because the agency's findings, inferences, conclusions or decisions are:

(1) In violation of constitutional provisions;

(2) In excess of the statutory authority or jurisdiction of the agency;

(3) Made upon unlawful procedure;

(4) Affected by other error of law;

(5) Unsupported by substantial evidence admissible under G.S. 150B-29(a), 150B-30, or 150B-31 in view of the entire record as submitted; or

(6) Arbitrary or capricious.

The Occupational Safety and Health Act was enacted " 'to assure so far as possible every working man and woman in the Nation safe and healthful working conditions and to preserve our human resources.' As we have repeatedly stated, the Act was not intended to be remedial so much as to 'prevent the first injury, including those of a non-serious nature.' " *Brock v. Dun-Par Engineered Form Co.*, 843 F.2d 1135, 1138 (8th Cir. 1988) (citations omitted). "Congress has made it clear that '[f]inal responsibility for compliance with the requirements of this act remains with the employer.' " *Id.*

[1] "[A]n employer [can] defend affirmatively on the ground that compliance with a standard is impossible because of the nature of the work in progress." Garrison & Associates, Inc., O.S.H. Dec. (CCH) paragraph 19,550 (1975) and cases cited therein. "But in all such cases the burden has been on the employer asserting the defense to establish it by a preponderance of the evidence." *Id.*

> The "impossibility" defense has been specifically discussed in connection with the safety devices requirement of 29 C.F.R. § 1926.105(a). The defense encompasses technological and also economic infeasibility, which is, however, narrowly construed since standards may be economically feasible within the meaning of the Act although financially burdensome.

*Southern Colorado Prestress Co. v. Occupational Safety and Health Review Commission*, 586 F.2d 1342, 1351 (10th Cir. 1978).

> In our view, if an employer has carried out its affirmative duty under the Act to take all available measures to protect its employees, then it should pose little additional hardship on the employer to show that alternative measures of protec-

tion were unavailable or infeasible. Indeed, it is the legal burden on the employer to make such a demonstration that provides a critical incentive for employers to faithfully carry out their duty to protect employees by all possible means.

843 F.2d at 1138. In proving the defense of impossibility, the employer must show that (1) compliance with the standard was not possible or would preclude performance of the work and (2) that the employer used alternative means of protection not specified in the standard, or that alternative means of protection were unavailable. *See Brock, supra; see also* Hughes Bros. Inc., O.S.H. Dec. (CCH) paragraph 22,909 (1978). "The employer bears the initial responsibility to comply with the standards promulgated by the Secretary. Where the employer determines that the specified means of compliance is infeasible, it must affirmatively investigate alternative measures of preventing the hazard, and actually implement such alternative measures to the extent feasible." 843 F.2d at 1139.

[2] The employer's burden of proof is not met by merely establishing the fact that an employer's press brakes are used in custom work rather than production work. K & T Steel, Corp., O.S.H. Dec. (CCH) paragraph 20,445 (1976). Likewise the burden is not carried by the employer when he merely establishes that "compliance is difficult, expensive, would require changes in modes of production, or that one method of compliance has been unsuccessfully attempted." Hughes Brothers Inc., O.S.H. Dec. (CCH) paragraph 22,909 (1978). Nor is it sufficient for the employer to show that guarding devices would slow down or impede the production rate. Mobile Component Distributors, Inc., O.S.H. Dec. (CCH) paragraph 20,477 (1976). "A successful economic feasibility argument must demonstrate both that it is extremely costly for the employer to comply with the Secretary's order and that the employer cannot absorb this cost. . . . Although the expense . . . may be somewhat burdensome, economic infeasibility is established only when the employer's existence as an entity is financially imperiled by compliance." *Faultless Division v. Sec. of Labor*, 674 F.2d 1177, 1190 (7th Cir. 1982).

Here respondent first contends that its substantial rights were prejudiced when the trial court affirmed the Review Board. Respondent argues that its rights were prejudiced by the reinstatement of the citation and fine and by the requirement that it install expensive guarding mechanisms which it contends would render the machines unusable for custom metal fabrication and effectively

prevent ABF from continuing its custom fabrication business. On this record, we disagree. Accordingly, this assignment of error must fail.

[3] Next, respondent contends that the Review Board erred when it concluded that respondent could have properly guarded each fabrication operation and thus respondent did not prove the impossibility defense.

After careful review of the record, we determine that the Review Board based its decision on its finding of fact that a separate point of operation guard could be provided for each individual press brake and on the following findings of fact relevant to the issue of whether respondent had carried its burden of proof on the impossibility defense. First, respondent had not contracted with professional safety consultants or engineers to recommend guards or alternate protection even though respondent had attended trade shows and consulted with sales personnel who stated that no existing guards could be used. Second, complainant presented evidence that safety guards and other protective measures had effectively been installed on similar press brakes used in similar manufacturing operations even though the guards inhibited production slightly or required production schedules to be readjusted. Third, complainant "contend[ed]" that light curtains, barrier guards (either fixed or movable), palm buttons, wrist restrainers or pullback devices were protective guards which could have been used. Fourth, respondent had never previously sought a variance or filed a petition for modification of abatement. Here, since respondent had not affirmatively investigated alternative measures of prevention, the defense of impossibility was not available. *See Brock, supra.* Accordingly, the Review Board's decision was not based on an error of law.

Respondent also contends that even if the Review Board correctly concluded that it was physically possible to guard the press brakes, the impossibility defense could still be established based on economic infeasibility. After careful review of the record, we find that respondent has not presented sufficient evidence to prove by the greater weight of the evidence that it was economically infeasible to guard the press brakes. There is conclusory testimony from Mr. Corn that guarding the press brakes would "put [ABF] out of business" and Mr. Poe's testimony that both Mr. Hedgecock and Mr. Corn told him that guarding the brakes could in fact

BROOKS v. AUSTIN BERRYHILL FABRICATORS

[102 N.C. App. 212 (1991)]

be done, but "would put them at a noncompetitive basis with their competitors in the marketplace." We hold this conclusory testimony insufficient to establish economic infeasibility. Accordingly, this contention has no merit.

Next, respondent contends that the trial court erred in affirming the decision of the Review Board because from a review of the entire record the Review Board's decision was not supported by substantial evidence. Respondent contends that "[a]n examination of all the evidence offered and contained in the Record reveals that not only is there no substantial competent evidence supporting the Review Board's decision; all competent evidence supports ABF's position that providing guards for the press brakes was impossible." Respondent further argues that complainant's evidence fails to reach the level of substantial evidence. We disagree.

At the outset, we note that "[t]he 'whole record' test does not permit the reviewing court to substitute its judgment for the agency's as between two reasonably conflicting views; however, it does require the court to take into account both the evidence justifying the agency's decision and the contradictory evidence from which a different result could be reached." *Lackey v. Dept. of Human Resources*, 306 N.C. 231, 238, 293 S.E.2d 171, 176 (1982). " 'Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' It is more than a scintilla or a permissible inference." *Id.*

Respondent has the burden of proving by the greater weight of the evidence the defense of impossibility. *See* Garrison & Associates, Inc., *supra.* We note parenthetically that proof by preponderance of the evidence and proof by the greater weight of the evidence are synonymous burdens of proof. *Cincinnati Butchers Supply Co. v. Conoly*, 204 N.C. 677, 169 S.E. 415 (1933). While it was respondent's burden to prove that the press brakes could not be guarded, complainant has presented substantial evidence on this issue. During the hearing, Art Willis, who was qualified as an expert in general industry safety, testified that light curtains, plastic plates and palm buttons were guards which could be used for custom operations. He further testified that he had seen a light curtain operate on equipment fabricating a piece similar to that fabricated by respondent. Darryl Poe, who was qualified as an expert in machine guarding, testified that he had visited respondent's plant to offer technical assistance and concluded that

barrier guards, movable barrier guards, restraints or pull back devices would be most feasible for respondent's operations and that he had seen these guarding devices successfully used in shops similar to respondent's plant. James Hall testified that he had observed the following safety devices and guards being used to properly guard machines in custom metal fabrication shops: pullbacks; restraints; fixed and movable barrier guards; physical barriers; and light screens or curtains. Complainant also introduced an exhibit showing guards which were available for press brakes.

In its brief, respondent argues that the testimony of witnesses Willis, Poe and Hall was adequately refuted. First, respondent contends that Mr. Willis' testimony was ineffectual on the issue of whether the subject press brakes could be guarded because Mr. Willis "was neither knowledgeable nor observant, and had never seen in operation — even in a production shop — *any* of the guards which he claims are. suitable for ABF's press brakes." We find that argument unpersuasive in view of testimony from Mr. Willis that he had seen these guards in use in similar operations. Respondent further contends that since Mr. Hall never visited respondent's place of business, his testimony on the impossibility issue was meaningless. While this factor may diminish the weight accorded to this testimony, the testimony itself could constitute substantial evidence. *See Lackey, supra.* Here, there was substantial evidence to support the Review Board's finding that it was feasible to guard the subject press brakes and that respondent failed to prove the defense of impossibility.

Respondent also contends that the trial court erred in affirming the Review Board's decision on the grounds that the Review Board's decision was contrary to the findings of fact and arbitrarily and capriciously omitted facts contained in the hearing officer's decision. We disagree.

The Review Board in its decision found that respondent had not presented sufficient evidence to prove by the greater weight of the evidence that it was impossible to guard the press brakes and that no available alternative protective measures could be used. Respondent argues that finding of fact number 17 was the only finding which related to the question of whether the subject press brakes could be guarded. We find ample evidence in the record on the feasibility of guarding the subject brakes. The findings of fact which were omitted by the Review Board in its decision were

not necessary to the decision. Accordingly, this contention has no merit.

Finally, respondent argues that it proved the defense of impossibility by a preponderance of the evidence. Here respondent presented two witnesses who testified that it was impossible to guard the brakes; however this testimony was adequately refuted. Donnis Corn, part owner of ABF, testified that he never designed a press brake, never designed any guards for ABF, had no formal training on custom metal fabrication, and had not operated any press brakes. Corn further testified that ABF had never sought a variance, had never sought assistance from experts in machine guarding or alternative means of protection, and had never tried to use any of the suggested devices. Likewise, a review of Mr. Hegner's testimony shows that he was only familiar with one type of guarding device, the light curtain, and that it was usually difficult to use this device or other devices in custom manufacturing; however, Mr. Hegner had not observed respondent's three unguarded press brakes specifically while they were in operation. Mr. Hegner even stated that he could only talk about the Sick Light Curtain since it was the only device that he sold. Respondent failed to respond to a Department of Labor request for an inspection of the three unguarded press brakes by a private consultant in machine guarding techniques to assist in assessing respondent's request for a variance. Here respondent has failed to show that the compliance with the standard was not possible or would preclude performance of its work or that it had used alternative means of protection or that alternative means were unavailable. *See Brock, supra.* Respondent has failed to prove by the greater weight of the evidence the impossibility defense. Accordingly, this assignment of error must fail.

The decision of the trial court is affirmed.

Affirmed.

Judges JOHNSON and PARKER concur.