**BANCKER CONSTRUCTION CORP., Petitioner,**

v.

**Robert REICH, Secretary of Labor, Occupational Safety and Health Review Commission, United States Department of Labor, Respondents.**

No. 1547, Docket 93–4268.

United States Court of Appeals,
Second Circuit.

Argued May 18, 1994.

Decided May 20, 1994.

James M. McGahan, Great Neck, NY (Martin, Van De Walle, Guarino & Donohue, of counsel), for petitioner.

Jennifer U. Toth, Attorney, U.S. Dept. of Labor, Washington, DC (Thomas S. Williamson, Jr., Sol. of Labor, Joseph M. Woodward, Associate Sol. for Occupational Safety and Health, and Ann Rosenthal, Counsel for Appellate Litigation, U.S. Dept. of Labor, of counsel), for respondent.

Before: MESKILL, MINER and MAHONEY, Circuit Judges.

**PER CURIAM:**

Petitioner Bancker Construction Corporation petitions for review of an October 18, 1993 final order of the Occupational Safety and Health Review Commission ("Commission") affirming a citation against Bancker for failing properly to protect employees from cave-ins during installation of a trench support system, in serious violation of 29 C.F.R. § 1926.652(e)(1)(ii), and imposing a $1000 penalty.

Bancker was engaged by New York Telephone to install an underground utility vault in Bethpage, New York. The vault was to be installed in a trench 11 feet wide, 32 feet long and 14 feet deep. Excavation began in August of 1991.

In order to protect workers during the construction of trenches, 29 C.F.R. § 1929.-652, promulgated by the Occupational Safety and Health Administration ("OSHA"), requires that employees working in trenches be protected by an adequate protection system such as a "sloping" or "benching" system, unless the excavation is made "entirely of stable rock" or is "less than 5 feet in depth and examination of the ground by a competent person provides no indication of a potential cave-in." Pursuant to 29 C.F.R. § 1962.-652(e)(1)(ii), "Support systems shall be installed and removed in a manner that protects employees from cave-ins, structural collapses, or from being struck by members of the support system."

Bancker stipulated that the trench in this case was excavated in Type C, or granular, soil. Bancker planned to utilize a shoring system to protect workers in the trench from cave-ins. In constructing the shoring system, Bancker planned to excavate a "pilot" cut or trench approximately 36 feet long, 18 feet wide and not more than five feet deep. The shoring system, consisting of a steel framework and wood sheeting, then was to be assembled in the pilot cut.

On August 5, 1991, after the pilot cut was made and while Bancker employees were installing the steel framework in the unprotected trench, an OSHA compliance officer arrived at the worksite to inspect the trench. The compliance officer took several photo-

graphs and measured the trench with a "trench stick" at seven different locations. These measurements indicated that the trench was more than five feet deep. On October 29, 1991, at a closing conference, the compliance officer notified Bancker that OSHA intended to issue a citation because Bancker had allowed workers to enter the unprotected trench. The citation was issued on November 25, 1991, after the vault had been sealed in the trench.

After a hearing, an Administrative Law Judge ("ALJ") for the Commission issued a decision on August 19, 1993 affirming the citation and assessing a $1000 penalty against Bancker. Bancker timely filed for discretionary review of the ALJ's decision with the Commission. By notice of final order, the Commission denied review. Bancker petitions this Court for review of the Commission's final order.

In reviewing a decision of the Commission, this Court must uphold findings of fact if they are supported by substantial evidence in the record. 29 U.S.C. § 660(a); *Olin Constr. Co. v. Occupational Safety & Health Rev. Comm'n*, 525 F.2d 464, 466–67 (2d Cir.1975). The Commission's orders may be set aside only if they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

Bancker argues that there was insufficient evidence in the record for the ALJ to conclude that it had violated section 1926.-652(e). Bancker contends that the Secretary of Labor was required to show that the sides of the trenches were subject to collapse or cave-ins or were otherwise unstable, and failed to do so. However, the cases cited by Bancker for the proposition that soil instability is an element of the violation all were decided under a former version of the OSHA trenching standards. *See, e.g., CTM, Inc. v. Occupational Safety & Health Rev. Comm'n*, 572 F.2d 262, 263 (10th Cir.1978). The former regulation required that "[s]lides of trenches in *unstable or soft material*, 5 feet or more in depth, . . . be shored, sheeted, braced, sloped, or otherwise supported" to protect against cave-ins. 29 C.F.R. § 1926.-652(b) (1988) (emphasis added). This rule

was interpreted as requiring proof that the soil was soft or likely to collapse. *CTM*, 572 F.2d at 263. The present regulation, adopted in 1989, is far more specific. A protective system now must be used in the excavation of any trench deeper than five feet, unless it is excavated in stable rock. 29 C.F.R. § 1926.652(a)(1). Accordingly, proof that the soil is unstable is no longer required. Bancker's additional argument that there was insufficient evidence to find that the trench was more than five feet deep at the time of the inspection is frivolous.

Bancker next argues that it established the affirmative defenses that it was technically impossible for it to comply with the regulation and that, even if it had complied with the regulation, the employees would have been exposed to a greater hazard. It is an affirmative defense to a charge of violating an OSHA standard that compliance was impossible or infeasible. The cited employer bears the burden of showing that compliance with the standard's literal requirements was impossible or would have precluded performance of the work. *Brock v. Dun–Par Engineered Form Co.*, 843 F.2d 1135, 1136 (8th Cir.1988). The employer also must show that it used alternative means of protection not specified in the standard or that alternative means were unavailable. *Id.* Avoidance of a greater hazard also is an affirmative defense. To establish the greater hazard defense, the employer must prove " '(1) the hazards of compliance with [the] standard are greater than the hazards of noncompliance, (2) alternative means of protection are unavailable, and (3) a variance was unavailable or inappropriate.' " *Dole v. Williams Enters. Inc.*, 876 F.2d 186, 188 (D.C.Cir.1989) (quoting *Lauhoff Grain Co.*, 13 O.S.H.Cas. (BNA) 1084 (OSHRC 1987)).

Here, Bancker wholly failed to establish the elements of either of these defenses. In particular we note that the ALJ found that it could have redesigned its shoring system or employed a sloping system or other protective system. Bancker does not dispute that finding. Accordingly, safe compliance with the regulations was possible and

alternative means of protection were available.

Finally, Bancker argues that the citation should be vacated due to the delay in its issuance. Pursuant to 29 U.S.C. § 658(a), if the Secretary of Labor believes an employer has violated a regulation, "he shall with reasonable promptness issue a citation to the employer." A citation will not be vacated for violation of the reasonable promptness requirement, even if there is a long delay between the inspection and the issuance of the citation, unless the employer can show some prejudice from the delay. *See, e.g., Donovan v. Royal Logging Co.,* 645 F.2d 822, 827–28 (9th Cir.1981) (five-month delay did not justify vacating citation).

Bancker contends that it was prejudiced in the preparation of its case because the trench had been filled by the time the citation was issued and it was unable to (a) more accurately measure the depth of the trench at the time referred to in the citation; (b) analyze the soil comprising the trench walls at that time; (c) photograph the project site; and (d) employ surveyors to measure the trench more accurately. The ALJ rejected all of these contentions. First, he noted that Bancker had taken measurements and photographs around the time of the inspection and more detailed information was unnecessary. With regard to analyzing the soil conditions, the ALJ noted that Bancker admitted that the soil was Type C and that an analysis of the soil would not have changed this fact. Indeed, unless Bancker could show that the trench actually was excavated in stable rock, it could not avoid the citation. Our review of the record confirms the ALJ's finding that Bancker was not prejudiced in its preparation of its case.

The petition for review is denied.