

1997 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-20-1997

# E&R Erectors Inc v. Secretary of Labor

Precedential or Non-Precedential:

Docket 96-3276

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1997

Recommended Citation

"E&R Erectors Inc v. Secretary of Labor" (1997). *1997 Decisions.* Paper 42.
http://digitalcommons.law.villanova.edu/thirdcircuit_1997/42

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 1997 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

NO. 96-3276
_____

E & R ERECTORS, INC.,

Petitioner,

v.

SECRETARY OF LABOR,

Respondent.
_____

On Petition for Review of a Final Order of the Occupational
Safety and Health Review Commission
_____

Submitted Under Third Circuit LAR 34.1(a)  January 10, 1997

Before:  COWEN, ALITO, and ROSENN, Circuit Judges.

Filed February 20, 1997
_____

John Philip Diefenderfer, Esquire
340 Harrisburg School Road
Quakertown, PA  18951
Counsel for Petitioner


J. Davitt McAteer, Solicitor of Labor
Joseph M. Woodward, Associate Solicitor for
  Occupational Safety and Health
Barbara Werthmann, Counsel for Appellate Litigation
Edward O. Falkowski, Attorney
U.S. Department of Labor
Room S-4004
200 Constitution Avenue, N.W.
Washington, D.C.  20210
Counsel for Respondent

_____

OPINION OF THE COURT
_____


ROSENN, Circuit Judge.

E & R Erectors, Inc. ("E & R") has petitioned this court for review of two citations and the accompanying penalty imposed upon it by the Occupational Safety and Health Review Commission ("Commission"). E & R argues that the Administrative Law Judge ("ALJ") erred in finding that E & R was the responsible employer on the worksite when the alleged violations occurred and also erred in finding that there was sufficient evidence to show that these violations did in fact occur. Equally important is the legal question raised by the Petitioner as to who bears the burden of proof when an employer claims that compliance with an Occupational Safety and Health Administration ("OSHA") regulation would create a greater hazard that would excuse non-compliance. The ALJ's decision ultimately became the final order of the Commission. We perceive no merit to E & R's numerous contentions and, therefore, deny the Petition for Review.

I.

On December 1, 1994, OSHA compliance officer George Boyd inspected a construction worksite in West Conshohocken, Pennsylvania, where a seven-story office building was being erected. The first three levels of the building were to serve as a parking garage; the four highest levels were designed for office space. At the time of Boyd's inspection, four levels had been constructed: the lowest three levels for parking and the first office level (labeled B-1 in the blueprints).

2

Immediately upon entering the site, Boyd observed that the area surrounding the counterweight of a large crane had not been barricaded or flagged off, as is required by federal regulations.[1] At the same time, Boyd saw an employee standing in the counterweight's swing area. Boyd videotaped the area and then introduced himself to the two employees operating the crane. One of the crane operators identified himself as an employee of E & R. Boyd told them that the area surrounding the crane's counterweight had to be barricaded according to federal regulations. The employees immediately put up flagging around the area.

Boyd then proceeded to the construction building and spoke with Fred Little, the superintendent on the job site for the general contractor, John McQuade Construction. Little told Boyd that the ironworkers on the site were employees of E & R. Following this conversation, Boyd went to the B-1 level of the building and spoke with two of the ironworkers working on this level. They introduced him to their foreman, who identified himself as Mr. Brown, an employee of E & R. The foreman also gave Boyd the address and telephone number of E & R Erectors, and told Boyd that E & R employed an aggregate of 40 persons.

---

1.    29 C.F.R. § 1926.550(a)(9) states that:  "Accessible areas within the swing radius of the rear of the rotating superstructure of the crane, either permanently or temporarily mounted, shall be barricaded in such a manner as to prevent an employee from being struck or crushed by the crane."

Boyd found that the ironworkers were installing large steel columns on the B-1 level of the building, and the installation process required that they stand near the edge of the open-sided floor on that level while guiding the columns into place. Temporary guardrails had been constructed around the perimeter of the level; these guardrails had been removed in the area of the southeast corner of the structure for installation of the columns. The ironworkers told Boyd that they didn't use any fall protection while installing the columns.[2] Boyd estimated the distance from the B-1 level to the ground to be between 29 and 33 feet; E & R insisted that the distance was only 24 feet. Federal regulations require that fall protection be provided if the distance is greater than 25 feet.[3] Therefore, Boyd determined that E & R was in violation of these safety regulations and that a citation should be issued for this violation.

On December 6, 1994, Boyd returned to the construction site and witnessed a man walking through the area which had been flagged off for the crane's counterweight swing radius. This man introduced himself to Boyd as Walter Cantley, and informed Boyd that he was E & R's superintendent. Cantley was also present at

---

2. While Boyd videotaped the installation of some columns at the worksite, he did not videotape the installation of the beams for which the citation was issued.

3. 29 C.F.R. § 1926.105(a) states: "Safety lines shall be provided when workplaces are more than 25 feet above the ground or water surface, or other surfaces where the use of ladders, scaffolds, catch platforms, temporary floors, safety lines or safety belts is impractical."

4

the closing conference held that day regarding the violations of federal safety regulations.

OSHA formally cited E & R on December 22, 1994, for three violations of the Occupational Safety and Health Act of 1970, 29 U.S.C. § 651 *et seq.* ("OSH Act") and its accompanying regulations. The citation for one violation was subsequently withdrawn. E & R contested the two remaining citations and a Commission ALJ held a hearing in September, 1995.

The ALJ found that E & R was the responsible employer at the site at the time of the violations and that sufficient proof of the two violations had been established. Therefore, the ALJ affirmed both the citations and the proposed penalty (a $ 3,000 fine). E & R petitioned the full Commission for discretionary review of the ALJ's order. The Commission denied review, and the ALJ's ruling became the final order of the Commission, pursuant to 29 U.S.C. § 661(j).

II.

The Commission had jurisdiction to adjudicate this matter pursuant to § 10(c) of the OSH Act, 29 U.S.C. § 659(c). This court has jurisdiction over this matter pursuant to 29 U.S.C. § 660(a), which gives the circuit in which the violation occurred jurisdiction to hear an appeal from the final order of the Commission.

5

Under the OSH Act, the findings of the Commission with respect to questions of fact shall be conclusive if supported by substantial evidence on the record considered as a whole. 29 U.S.C. § 660(a); Martin v. Bally's Park Place Hotel & Casino, 983 F.2d 1252, 1256 (3d Cir. 1993). Legal conclusions may be set aside if they are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. Atlantic & Gulf Stevedores, Inc. v. Occupational Safety & Health Review Comm'n, 534 F.2d 541, 547 (3d Cir. 1976); 5 U.S.C. § 706(2)(A). The Secretary's reasonable legal interpretation of the OSH Act, a statute the Secretary is charged with administering, is entitled to deference. Martin v. Occupational Safety & Health Review Comm'n, 499 U.S. 144, 150 (1991). In light of the OSH Act's broad remedial purpose, the Act and regulations issued pursuant to it should be liberally construed so as to afford the broadest possible protection to workers. Whirlpool Corp. v. Marshall, 445 U.S. 1, 12-13 (1980).

## A.

E & R first challenges the sufficiency of the evidence upon which the ALJ relied in concluding that E & R was on the worksite and employed the ironworkers charged with these violations. E & R asserts that the ALJ credited hearsay testimony over direct testimonial and documentary evidence, and that the ALJ erred in so doing. The ALJ, however, is entitled to

6

consider all admissible evidence in reaching his factual determination, and this finding will be sustained if there is substantial evidence in the record as a whole to support it.

E & R first asserts that OSHA failed to verify the identity of the ironworkers on the worksite and that it therefore has not satisfied its burden on this issue. The only evidence presented by the Secretary of Labor was the testimony of the OSHA compliance officer, George Boyd. Boyd testified that he inquired who employed the ironworkers to determine the identity of the responsible employer. Fred Little, the general contractor's superintendent, and Brown, the foreman of the ironworkers, both informed him that the ironworkers were employed by E & R Erectors. Additionally, Boyd testified that he spoke to Walter Cantley, E & R's superintendent, at the job site on December 6, a few days after the alleged violations, and that Cantley was present at the conference later that day relating to the violations. E & R is correct when it contends that this testimony was hearsay evidence. However, E & R failed to object to this evidence at the administrative hearing and it was therefore admissible as evidence. United States v. Diaz, 223 U.S. 442, 450 (1911) ("[W]hen [hearsay evidence] is admitted without objection it is to be considered and given its natural probative effect as if it were in law admissible"); Wigmore on

7

Evidence § 18 n.1 (1983).[4]  Thus, this evidence has whatever probative value that the ALJ, as the trier of fact in this proceeding, reasonably accorded it.

E & R responded to Boyd's testimony with three pieces of evidence: payroll records, the subcontracting agreement, and the testimony of Eugene Grossi, E & R's vice-president.  As to the testimony of Grossi, it was within the discretion of the ALJ to determine how much weight should be given to the witness' testimony, particularly in light of Grossi's admission that he was not involved in the day-to-day operations of the company.  Therefore, Grossi's statement that E & R was not on the worksite could properly have been considered less probative than the statements of the general contractor's superintendent and the ironworkers' foreman.

The payroll records for the week of the alleged violation show that none of the employees named by Boyd are listed on E & R's payroll for New Jersey.  Therefore, an employee who was working in Pennsylvania, as was the case here, would not be included in these records.  Thus, these records provide only marginal evidence, if any, of E & R's assertion that these ironworkers were not E & R employees.  The subcontracting

---

4.    In his decision, the ALJ stated that the hearsay evidence was admissible under Federal Rule of Evidence Rules 801(d)(2)(D) (statements of party-opponent) and 803(1) (present sense impression).  E & R Erectors argues that the ALJ erred in these evidentiary rulings.  However, E & R did not object to these statements as hearsay at the hearing and therefore cannot now object to the admission of this evidence.

agreement states that the contract was awarded to Samuel Grossi and Sons, Inc., of which Eugene Grossi was company president and his brother vice-president, and had been subcontracted to Bensalem Steel, owned by Grossi's son and niece. Along with corporate officers, these two companies share a common address and telephone number with E & R Erectors. Given the almost transparent interplay of the companies involved in this matter, the ALJ reasonably determined and found that the subcontract would not outweigh the testimony of the OSHA compliance officer.

The ALJ fairly weighed the evidence presented by E & R against Boyd's testimony. His determination that E & R was the employer of the ironworkers on the jobsite at the time of the violation was supported by the testimony of Boyd, the OSHA compliance officer. E & R's evidence was not conclusive on this matter and does not compel a decision different than that reached by the ALJ. Therefore, the ALJ's determination that E & R Erectors was the responsible employer on the job site is supported by the record and therefore will be regarded as conclusive for the purposes of this review.

On the matter of who operated the crane, which provided the basis for the second violation, Boyd testified that crane was a Hawthorne crane and that the operator told him he was an E & R employee. E & R dismisses this testimony as hearsay, although they did not challenge the evidence as such at the administrative hearing. To prove that the operator was not an E & R employee,

Grossi testified that he was told that the crane belonged to the Hawthrone Company and that it was being operated by Hawthorne employees. This testimony was objected to by the Government as hearsay and this objection was sustained.

E & R has failed to present any documentary evidence establishing that the crane was owned/supplied by Hawthorne, much less that Hawthorne employees operated the crane. The only evidence it presented as to identity, Grossi's testimony, was objected to and sustained. Thus, the only evidence before the ALJ on the matter of the operator's identity was Boyd's hearsay testimony. Therefore, there is sufficient evidence on the record to sustain the ALJ's finding that E & R was the responsible employer for purposes of the violation of § 1926.550(a). The ALJ's finding that E & R was the responsible employer on the worksite for purposes of the violations will be sustained.

B.

29 C.F.R. § 1926.105(a) requires that fall protection measures be used when employees are working more than 25 feet above the ground. E & R asserts that the ironworkers were only 24 feet above the ground at the time of the alleged violation, and therefore no violation of § 1926.105(a) actually occurred. The ALJ found that the distance from level B-1 to the ground was at least 25.5 feet, and affirmed the citation for this violation.

10

This factual finding is conclusive if it is supported by substantial evidence on the record.

In his decision, the ALJ referred to the blueprints for the building. According to the ALJ, the blueprints show that the distance between level B-1 and the ground was at least 25.5 feet. He concluded that E & R erred in its reading of the blueprints, which it read as showing a distance of only 24 feet, because it failed to account for a 1.5 foot section of the structure.

In addition to the blueprints, the ALJ had the benefit of testimony of three witnesses on the matter of the fall distance. Boyd, the OSHA compliance officer, testified that the distance was approximately 33 feet, because the area over which the ironworkers were working at the time of the violation had been dug out to create a loading dock. He testified that he studied the engineer's drawings at the construction site and calculated the fall distance to be 29 feet. He then added four additional feet to the fall hazard to account for the area which had been excavated to construct a loading dock. He concluded that this was a fall distance of 33 feet.

Grossi agreed that the fall distance would have been approximately 29 feet, but testified that there was a soil overburden at the corner where the violation allegedly occurred. He testified that soil overburden would be five feet high, which would leave only a 24 foot fall. Grossi later testified that he

11

himself had never been to the job site, having only viewed it as he drove past it on the way to an area country club.

A project manager for the architects, Michael Spadafora, supported Boyd's testimony at the hearing. Spadafora testified, using the blueprints and the videotape of the scene, that the area in question had not been backfilled at the time the videotape was shot. He testified that the fall distance would therefore have been at least 29 feet at the time of the alleged violation.

Based upon the foregoing, the ALJ had substantial evidence in the record to determine that the fall distance was at least 25 feet at the time of the alleged violation. The ALJ had the blueprints and the testimony of two witnesses that the fall distance was greater than 25 feet. The only evidence to the contrary was the testimony of Grossi, which the ALJ found not credible. There was substantial evidence on the record to support the ALJ's finding that the fall hazard confronting the ironworkers was greater than 25 feet.

C.

E & R further asserts that the OSHA compliance officer "has the duty to bring all `greater hazard' defenses to the Supervisor's attention, and that no Citation shall be issued if the elements of an affirmative defense are present," citing 59

12

Fed. Reg. 40684-85 as support.  In fact, this section of the

Federal Register actually states:

> OSHA has long acknowledged that there may be circumstances at a particular workplace which would make it unreasonable for the Agency to pursue a citation.  In the enforcement context, OSHA has consistently placed the burden on the employer in question to establish any such circumstances as "affirmative defenses" to OSHA citations.  The Agency has had considerable experience in evaluating employers' efforts to establish affirmative defenses (e.g., "impossibility" (sometimes also known as "infeasibility") and "greater hazard" defenses) to citations.  Based on that experience, OSHA has developed Section V.E of the Field Operations Manual (FOM) to guide OSHA personnel in assessing those defenses.
>
> . . . Under Section V.E.3.d, an OSHA compliance officer who becomes aware that an employer is raising an affirmative defense is directed to gather pertinent information and to bring any possible defenses to the attention of his or her supervisor.  That section further provides that a citation is not issued when OSHA determines that each and every element of an affirmative defense is present.

Under these guidelines, the employer may have an affirmative

defense to a charge of violating an OSHA standard that compliance

was impossible or infeasible.  Bancker Constr. Corp. v. Reich, 31

F.3d 32, 34 (2d Cir. 1994).  The burden of establishing an

affirmative defense is on the employer, and *every* element of an

affirmative defense must be established to preclude issuance of a

citation.  A compliance officer is not obligated to prove the

employer's case; rather, the compliance officer's only obligation

is to gather pertinent information and bring it to the attention

of his or her supervisor when he "*becomes aware that an employer*

13

*is raising an affirmative defense*." 59 Fed. Reg. at 40685 (emphasis added). The burden, however, is on the employer to establish the defense in the first place. In this case, E & R's simple assertion in their brief that "[t]he elements were present" will not sustain this burden.

E & R raises both an impossibility defense and a greater hazard (infeasibility) defense on this appeal. However, E & R has clearly failed to establish the elements of an impossibility defense before the ALJ or the compliance officer. To establish an impossibility defense, the employer must show: (1) that it would be impossible to comply with the standard's requirements or that it would have precluded performance of the work; and (2) that there were no alternative means of employee protection available. 59 Fed. Reg. 40684. E & R failed to present any evidence to the compliance officer or the ALJ to establish that it was impossible to comply with the safety requirements; in fact, Grossi conceded that the use of lifelines was feasible as a means of fall protection. He asserted, however, that this was an unsafe practice, arguing that it presented a "greater hazard" than the risk of a fall. "Avoidance of a greater hazard is also an affirmative defense," Bancker Constr., 31 F.3d at 34, which the employer has the burden of proving.

Despite Grossi's assertions, E & R has also failed to establish a "greater hazard" defense. In order to establish this

14

defense, an employer must establish that compliance with a standard would result in greater hazards to employees than non-compliance, that there are no alternative means of employee protection available, and that a variance was unavailable or inappropriate. 59 Fed. Reg. 40684; Voegele Co. v. Occupational Safety & Health Review Comm'n, 625 F.2d 1075, 1080 (3d Cir. 1980). All three elements must be shown to establish a greater hazard defense. Voegele Co., 625 F.2d at 1081.

Grossi testified as to the risks presented by lifeline entanglement and the limited mobility for the ironworkers "tied off" in this manner. Boyd, the compliance officer, testified that the use of lifelines was a feasible and safe means of fall protection if done properly. Additionally, Boyd asserted that the workers could wear lifelines while installing safety nets, another means of complying with § 1926.105(a).

The ALJ determined, after listening to the evidence, that Grossi failed to establish that a "greater hazard" existed, excusing his noncompliance with § 1926.105(a). The ALJ found lifelines could have been used during the installation of the columns, and also could have been used while installing safety nets. The ALJ found that "E & R has not refuted the Secretary's *prima facie* case that a practical means of fall protection was

15

available."[5]  Therefore, the ALJ held that the greater hazard defense was not applicable in the present matter.

In fact, the burden is not on OSHA to prove that a practical means of fall protection is available; rather, the burden is on the employer to prove that one is not. E & R failed to establish that compliance with the standard presented a greater safety risk than the 25-foot fall would have. As noted above, E & R also failed to present evidence that no alternative means of protecting the ironworkers were available or that a variance would have been inappropriate in this case. Thus, we hold that E & R has failed to satisfy the burden required of them to establish that compliance with the OSHA regulation constitutes a greater hazard that would excuse non-compliance with the regulation. The ALJ's determination that there was no greater hazard defense to this violation is supported by substantial evidence on the record, and his legal conclusion is not arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with the law on this matter.

Additionally, E & R argues that they cannot be cited under 29 C.F.R. § 1926.105(a) because OSHA imposed a moratorium on citations under Subpart R, dealing with fall protection in steel erections. However, E & R was charged with violating 29

_____

5.    Additionally, E & R failed to assert that an application for a variance would have been inappropriate in the present matter, nor did E & R establish that no other means of fall protection were available. Therefore, E & R has failed to establish the greater hazard defense under the test set forth by this Court. Voegele Co., 625 F.2d at 1080.

16

C.F.R. § 1926.105(a) [Subpart E] in December of 1994; the amendments moving this section into Subpart R were not effective until February 6, 1995. Therefore, neither the amendments nor the moratorium on the enforcement of these amended regulations has an impact on this case.

OSHA committed no error in charging E & R with a violation of § 1926.105(a) under Subpart E, which governs "Personal Protective and Life Saving Equipment" for Construction. This section applied to all construction work, including the steel erection industry, at the time the violations took place. See 59 Fed. Reg. 40724 ("The requirements of § 1926.105(a) . . . will continue to apply to steel erection of buildings until Subpart R is revised.") Therefore, no bar precluded enforcement of this provision in the instant case and the citation charging E & R with violating this section will stand.

### III.

For the foregoing reasons, the Petition for Review of the Order of the Occupational Safety and Health Review Commission will be denied. Costs taxed against the petitioner.

17