[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Jackson Tube Serv., Inc. v. Indus. Comm.*, Slip Opinion No. 2018-Ohio-3892.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2018-OHIO-3892

THE STATE EX REL. JACKSON TUBE SERVICE, INC., APPELLANT, *v*. INDUSTRIAL COMMISSION OF OHIO ET AL., APPELLEES.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Jackson Tube Serv., Inc. v. Indus. Comm.*, Slip Opinion No. 2018-Ohio-3892.]**

*Workers' compensation—To establish impossibility as an affirmative defense to an application for an additional award for a violation of a specific safety requirement, an employer must show (1) that it would have been impossible to comply with the specific safety requirement or that compliance would have precluded performance of the work and (2) that no alternative means of employee protection existed or were available.*

(No. 2017-0790—Submitted April 10, 2018—Decided September 27, 2018.)

APPEAL from the Court of Appeals for Franklin County, No. 16AP-351, 2017-Ohio-1573.

_____

**SYLLABUS BY THE COURT**

To establish impossibility as an affirmative defense to an application for an additional award for a violation of a specific safety requirement, an employer must show (1) that it would have been impossible to comply with the specific safety requirement or that compliance would have precluded performance of the work and (2) that no alternative means of employee protection existed or were available.

_____

**O'DONNELL, J.**

{¶ 1} Jackson Tube Service, Inc., appeals from a judgment of the Tenth District Court of Appeals denying its request to compel the Industrial Commission to vacate its order that granted Chad Thompson's application for an additional award due to the violation of a specific safety requirement ("VSSR") and to issue an order denying the application based on the defense of impossibility.

**Case History**

{¶ 2} Thompson, an industrial electrician in the maintenance department of Jackson Tube, was injured on November 18, 2009 while in the process of reinstalling a flywheel in a cutoff machine. A crane held the suspended flywheel in a sling as Thompson and a coworker worked beneath it, trying to move the flywheel into position, but the sling broke, dropping the flywheel which struck Thompson and broke both legs. His workers' compensation claim was allowed for bilateral femur fracture and right femoral shaft nonunion.

{¶ 3} Thompson also filed an application for a VSSR award, alleging violations of numerous sections of the Ohio Administrative Code related to hoisting and haulage equipment, power-driven cranes and hoists, and cranes, hoists, and derricks.

{¶ 4} At a hearing on the VSSR application, Thompson testified, "*It's my understanding* that there is a fixture for that application that's offered by the

manufacturer, and that was only noted after the accident when we had gone back and taken a look." (Emphasis added.) However, Jackson Tube's maintenance supervisor, Ron Kimrey, and its manager of safety and training, David Booher, both testified that they were not aware of an alternative way to perform the job in a fashion that absolutely kept an individual from being under the flywheel while it was placed back onto the cutoff machine.

{¶ 5} A staff hearing officer granted the VSSR application, determined that Thompson's injury occurred when he was required to work under a suspended load in violation of Ohio Adm.Code 4123:1-5-15(D), and rejected Jackson Tube's argument that it was impossible to comply with the specific safety requirement ("SSR"). In reaching that conclusion, the hearing officer relied on Thompson's understanding that the manufacturer offered a fixture that could have been used to perform the task differently. Thus, the hearing officer concluded the employer's violation of Ohio Adm.Code 4123:1-5-15(D) constituted a VSSR.

{¶ 6} Jackson Tube filed a motion for rehearing under Ohio Adm.Code 4121-3-20(E)(1)(b), alleging that the order granting Thompson's application was based on an obvious mistake of fact or clear mistake of law. In support of its motion, Jackson Tube offered Kimrey's affidavit, which stated that Thermatool, the manufacturer of the cutoff machine, verified that it "does not manufacture or provide a device or mechanism to assist in removing or replacing the flywheel." Kimrey further attested that "Thermatool's engineer, Dan Lungo, has also * * * indicated that he is not aware of any device or mechanism designed to assist in removing or replacing the flywheel on the Cut Off Machine used at Jackson Tube." And although Lungo told Kimrey that "the only way to replace the flywheel * * * without using a crane and sling is to unbolt the machine from the floor and use heavy machinery to tilt the machine onto a 45 degree angle," Kimrey explained that he had researched the availability of a device to support the machine at a 45 degree angle and "can state that no such device exists."

**{¶ 7}** In denying the motion for rehearing, the hearing officer determined that Jackson Tube did not meet the criteria for rehearing set forth in Ohio Adm.Code 4121-3-20(E)(1) and stated that an obvious mistake of fact is not shown merely because a hearing officer relies on evidence or testimony that is contrary to or inconsistent with evidence presented by the opposing party.

**{¶ 8}** Jackson Tube filed a complaint seeking a writ of mandamus in the Tenth District Court of Appeals alleging that the commission had abused its discretion when it rejected Jackson Tube's impossibility defense and when it denied the motion for rehearing.

**{¶ 9}** A magistrate concluded that the commission did not abuse its discretion when it determined that Jackson Tube failed to establish a clear mistake of fact to justify rehearing or when it concluded that Thompson was entitled to an award for a VSSR. The magistrate noted that the commission relied on Thompson's testimony that Thermatool, the manufacturer of the cutoff machine, offered a fixture that would help support the flywheel while it was being reinstalled, and that Jackson Tube had offered no evidence to the contrary. In addition, the magistrate determined that Kimrey's affidavit did not conclusively prove that it was impossible for Jackson Tube to comply with the SSR.

**{¶ 10}** The court of appeals adopted the magistrate's findings of fact and conclusions of law and denied Jackson Tube's request for a writ of mandamus.

**{¶ 11}** Jackson Tube filed this appeal, raising the following propositions of law for our review:

The Court of Appeals erred when it rejected Jackson Tube's "impossibility" defense.

The Court of Appeals erred when it failed to address SHO Cromley's denial of Jackson Tube's motion for a rehearing.

**Positions of the Parties**

{¶ 12} Jackson Tube asserts that when compliance with a specific safety requirement is impossible, an application for a VSSR award should not be granted. In this case, it contends that there was no way to repair the cutoff machine without requiring employees to work under the suspended flywheel and that Thompson's "understanding" about the existence of a fixture that allowed the flywheel to be removed without using a crane has no basis in fact and has been wholly refuted by contrary testimony. Jackson Tube further maintains that it is impossible to unbolt the cutoff machine from the floor and use heavy machinery to tilt it to a 45 degree angle because no device exists that could support the machine at that angle. Lastly, it argues that the commission abused its discretion when it denied the motion for rehearing, as it relied upon a mistake of fact when it granted a VSSR award.

{¶ 13} Neither the commission nor Thompson filed an appellee's brief.

**Issue**

{¶ 14} This case presents an issue of first impression: whether impossibility is a defense to a VSSR claim.

**Legal Analysis**

{¶ 15} The crux of the dispute in this case arises from Ohio Adm.Code 4123:1-5-15(D), which states, "Employees shall not be required to work or pass under suspended loads, nor shall the crane operator be required to carry a suspended load over employees."

{¶ 16} To prevail on its mandamus claim seeking to have the appellate court order the commission to vacate its VSSR award, Jackson Tube must demonstrate that the commission's decision to issue a VSSR award was an abuse of discretion. *See State ex rel. Armstrong Steel Erectors, Inc. v. Indus. Comm.*, 144 Ohio St.3d 243, 2015-Ohio-4525, 41 N.E.3d 1233, ¶ 13. An abuse of discretion occurs when the record contains no evidence to support the commission's order. *State ex rel. Burley v. Coil Packing, Inc.*, 31 Ohio St.3d 18, 20, 508 N.E.2d 936 (1987).

*Impossibility as a Defense to Violating an SSR*

{¶ 17} In the context of VSSR awards, this court has previously considered cases where the employer raised impossibility as a defense, but in those cases, found the record contained some evidence that it was not impossible for the employer to comply with the regulation at issue. *See State ex rel. Mosser Constr., Inc. v. Indus. Comm.*, 61 Ohio St.3d 445, 575 N.E.2d 193 (1991) (Where removal of a section of duct pipe left an unguarded opening in a work platform that Donald Saam fell through and did not survive, Mosser Construction, Inc. argued impossibility to comply with the regulation. This court held that the commission did not abuse its discretion in granting a VSSR award and in finding that while it would have been difficult to follow the guarding requirement, it was not impossible); *see also State ex rel. Go-Jo Industries v. Indus. Comm.*, 83 Ohio St.3d 529, 700 N.E.2d 1264 (1998) (Where Rodney Gist had reached into a cartoner machine to remove a carton and the machine pulled his hand, the commission determined that Go-Jo Industries violated the regulation to equip the machine with means to disengage its power, and granted a VSSR award. We acknowledged that it would be impossible to comply with the SSR if the controls had to be within easy reach of all possible positions but concluded that there was " 'some evidence' supporting the conclusion that [Gist's] presence at the site of injury was not abnormal, irregular, or unusual in the performance of his duties").

{¶ 18} Neither case, however, fully developed the concept of impossibility as a defense to a VSSR award.

*Impossibility as a Defense to Violating an OSHA Standard*

{¶ 19} Federal courts have considered impossibility as an affirmative defense to a charge of violating an Occupational Safety and Health Administration ("OSHA") standard and have held that to establish this defense, the employer must demonstrate (1) that compliance with the standard's requirements is impossible or would have precluded performance of the work and (2) that no alternative means

of employee protection had been available. *See Brock v. Dun-Par Engineered Form Co.*, 843 F.2d 1135, 1136 (8th Cir.1988) (concluding that the employer has the burden to establish that alternative means of compliance were not available); *Bancker Const. Corp. v. Reich*, 31 F.3d 32, 34 (2d Cir.1994) (where the court found the employer failed to establish that it was impossible to comply with a requirement that employees working in trenches be protected by an adequate protection system); *A/C Elec. Co. v. Occupational Safety & Health Review Comm.*, 956 F.2d 530, 534 (6th Cir.1991) (acknowledging employer could raise impossibility as an affirmative defense but concluding employer waived it under the circumstances); *E&R Erectors, Inc. v. Secy. of Labor*, 107 F.3d 157, 163 (3d Cir.1997) (holding that an employer failed to present any evidence that it was impossible to comply with regulation requiring that fall protection be provided if the distance from the ground is greater than 25 feet).

### Impossibility as a Defense to VSSR

{¶ 20} In accord with these cases, we conclude that to establish impossibility as an affirmative defense to an application for an additional award for a violation of a specific safety requirement, an employer must show (1) that it would have been impossible to comply with the specific safety requirement or that compliance would have precluded performance of the work and (2) that no alternative means of employee protection existed or were available

{¶ 21} In *E&R Erectors*, an OSHA compliance officer inspected a construction worksite where a seven story building was being raised and witnessed E&R Erectors employees installing large steel columns on a level of the building that he estimated to be between 29 and 33 feet from the ground. *Id.* at 159-160. After observing that temporary guardrails had been removed in the area where the employees were working, the employees also told him that they did not use any fall protection while installing the columns. *Id.* Thereafter, he determined E&R violated federal regulations that required fall protection be provided if the distance

from the ground is greater than 25 feet, and OSHA subsequently issued a citation for this violation. *Id.* at 160. Following a hearing before an OSHA Commission administrative law judge, the commission rejected E&R's argument that it had been impossible to comply with the regulations, affirmed the citation, and issued a fine. *Id.* at 160, 164.

**{¶ 22}** In affirming the commission's order, the Third Circuit Court of Appeals stated that "E&R failed to present any evidence to the compliance officer or the ALJ to establish that it was impossible to comply with the safety requirements," and it noted that E&R's vice president had "conceded that the use of lifelines was feasible as a means of fall protection." *Id.* at 163.

**{¶ 23}** Contrary to the lack of evidence of impossibility in *E&R Erectors*, there is evidence in this case that compliance with Ohio Adm.Code 4123:1-5-15(D) was impossible. In granting the VSSR award to Thompson, the commission relied on Thompson's understanding that an alternative means of replacing the flywheel existed, which did not require an individual to stand under it.

**{¶ 24}** However, the commission erred by relying on Thompson's mistaken supposition. It did not constitute some evidence upon which the commission could rely, because Thompson's speculation never established that Thermatool offered such a fixture, or that one exists, and Jackson Tube presented evidence—not supposition—that rebutted the speculative statement and established that no such fixture existed and had never been manufactured. Jackson Tube's employees, Kimrey and Booher, both testified at the hearing on the VSSR application that they were not aware of any alternative means to replace the flywheel in a fashion that kept an individual from being under the suspended load while it was placed back onto the cutoff machine. And Lungo, Thermatool's engineer, indicated he is unaware of any device to assist in replacing a flywheel on the cutoff machine.

**{¶ 25}** In addition, Kimrey's affidavit confirmed that Thermatool verified that it had not manufactured a device or mechanism to assist in removing or

8

replacing the flywheel. And while Lungo told Kimrey that the flywheel could be replaced by using heavy machinery to tilt the cutoff machine onto a 45 degree angle, Kimrey researched the availability of such a machine and concluded that it does not exist.

{¶ 26} Thus, when an employer presents evidence in connection with an application for an additional award for violation of a specific safety requirement that establishes it would have been impossible to comply with the standard's requirement or that compliance would have precluded performance of the work and that no alternative means of employee protection existed or were available, the employer establishes the affirmative defense of impossibility of compliance.

{¶ 27} In this case, the commission abused its discretion in granting a VSSR award because it relied on speculative testimony regarding the existence of alternative means of performance proved wholly nonexistent. The evidence here demonstrates that Jackson Tube established the defense of impossibility.

{¶ 28} The dissent's position that "Thompson's testimony that *he believed* there was a 'fixture' that would have assisted in replacing the flywheel without requiring him to work under a suspended load constitutes some evidence supporting the commission's order" is not well taken. (Emphasis added.) Dissenting opinion at ¶ 32. The dissent fails to address the lack of an evidentiary basis for Thompson's testimony. Thompson's unsubstantiated belief, unsupported by personal knowledge, does not constitute evidence of the existence of an alternative means to replace the flywheel. *See State ex rel. Cassels v. Dayton City School Dist. Bd. of Edn.*, 69 Ohio St.3d 217, 223, 631 N.E.2d 150 (1994) ("A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that he has personal knowledge of the matter"). Hence, there is no evidence that it had been possible for Jackson Tube to comply with the SSR.

## Conclusion

{¶ **29**} Because there is no evidence to support the commission's decision to grant an award for a VSSR, the commission abused its discretion, and therefore we reverse the judgment of the court of appeals and grant Jackson Tube's request for a writ of mandamus compelling the commission to vacate its order and to issue an order denying the VSSR application. Jackson Tube's alternative request for a writ of mandamus compelling a rehearing is dismissed as moot.

Judgment accordingly.

KENNEDY, FRENCH, and FISCHER, JJ., concur.

O'CONNOR, C.J., dissents, with an opinion joined by DEWINE and DEGENARO, JJ.

_____

**O'CONNOR, C.J., dissenting.**

{¶ **30**} I respectfully dissent. The Industrial Commission did not abuse its discretion in granting Chad Thompson's application for an award based on the violation of a specific safety requirement ("VSSR") by appellant Jackson Tube Service, Inc. ("Jackson Tube"), nor did it abuse its discretion in denying Jackson Tube's motion for rehearing.

{¶ **31**} It is well established that we review an order of the commission challenged in mandamus under the abuse-of-discretion standard. *State ex rel. Consolidation Coal Co. v. Indus. Comm*, 78 Ohio St.3d 176, 177, 677 N.E.2d 338 (1997). We are required to uphold the order so long as it is supported by "some evidence." *Id.* The commission is also the "exclusive evaluator of weight and credibility." *State ex rel. LTV Steel Co. v. Indus. Comm.*, 88 Ohio St.3d 284, 287, 725 N.E.2d 639 (2000); *State ex rel. Athey v. Indus. Comm.*, 89 Ohio St.3d 473, 475, 733 N.E.2d 589 (2000). "To go further and assess the credibility of the evidence would place this court 'in the role of a "super commission," a role never envisioned by either the Ohio Constitution or the General Assembly.' "

*Consolidation Coal* at 177, quoting *State ex rel. Burley v. Coil Packing, Inc.*, 31 Ohio St.3d 18, 20, 508 N.E.2d 936 (1987).

{¶ 32} With respect to the commission's order granting the VSSR award, the commission considered evidence from both sides concerning whether it was impossible for Jackson Tube to comply with Ohio Adm.Code 4123:1-5-15(D), which prohibits employers from requiring employees to work under a suspended load. In my view, Thompson's testimony that he believed there was a "fixture" that would have assisted in replacing the flywheel without requiring him to work under a suspended load constitutes some evidence supporting the commission's order. Indeed, Jackson Tube's maintenance manager, Ron Kimrey, and its manager of safety and training, David Booher, both confirmed that after Thompson was injured, Jackson Tube made a hook that was intended to enable workers to replace the flywheel without having to work under a suspended load. Although they testified that the hook had not been tested, this testimony constitutes additional evidence supporting the conclusion that compliance with the rule was not impossible. To the extent that the evidence presented by Jackson Tube at the hearing supported the opposite conclusion—for example, testimony by Kimrey that he was not aware of any third-party tool or device that could assist in replacing the flywheel without violating Ohio Adm.Code 4123:1-5-15(D)—it is not our role under the "some evidence" standard to decide which side has more evidence or which evidence is more credible. *LTV Steel* at 287; *Athey* at 475.

{¶ 33} I would also find that the commission did not abuse its discretion in denying Jackson Tube's motion for rehearing. Rehearing can be obtained under Ohio Adm.Code 4121-3-20(E)(1) in two circumstances: when a movant presents new evidence or "in exceptional cases where the order was based on an obvious mistake of fact or clear mistake of law." Ohio Adm.Code 4121-3-20(E)(1)(a) and (b). Jackson Tube sought rehearing based on the latter circumstance, claiming that the commission made an "obvious mistake of fact" and a "clear mistake of law"

under paragraph (E)(1)(b). What stands out, however, is that Jackson Tube's motion and arguments are based on evidence that was not presented to the commission at the hearing. Specifically, at the hearing, testimony from Kimrey and Booher provided the main support for Jackson Tube's argument that compliance with Ohio Adm.Code 4123:1-5-15(D) was impossible. In seeking rehearing, Jackson Tube presented more testimony from Kimrey, in the form of an affidavit, focused entirely on providing additional support for that same argument.

{¶ 34} Under Ohio Adm.Code 4121-3-20(E)(1)(a), new evidence can form the basis of a motion for rehearing only if it was "not previously considered and * * * by due diligence could not [have been] obtained * * * prior to the merit hearing." Jackson Tube makes no argument that the Kimrey affidavit would meet this standard. Instead, it appears to attempt an end run around paragraph (E)(1)(a) by casting this evidence as proof of an "obvious mistake of fact" under paragraph (E)(1)(b). In other words, Jackson Tube could have presented all of the evidence in the Kimrey affidavit at the hearing, but it failed to do so and is now trying to get a second bite at the apple. The commission did not abuse its discretion by rejecting that effort.

{¶ 35} The majority, however, lets Jackson Tube have its second bite. It then goes further and grants Jackson Tube the relief it seeks by applying the wrong standard of review. Instead of considering whether there is "some evidence" to support the commission's two orders, the majority, addressing neither order in particular, looks for, and identifies, "some evidence" supporting Jackson Tube's argument. The majority then dismisses the evidence relied on by the commission as a "mistaken supposition." In particular, it casts Thompson's testimony concerning the "fixture" developed by Jackson Tube as "speculation," without acknowledging that the existence of this "fixture" was confirmed at the hearing by both Kimrey and Booher. Majority opinion at ¶ 24. The majority then finds that

12

Jackson Tube established the impossibility defense based on the new evidence in the Kimrey affidavit submitted only in support of the motion for rehearing.

{¶ 36} The majority's analysis does not adhere to the rules we have established governing our review of a commission order. It turns the "some evidence" standard inside out and openly reassesses the weight and credibility of the evidence, including evidence belatedly and improperly submitted only after Jackson Tube suffered an adverse VSSR-award decision. *Contra LTV Steel*, 88 Ohio St.3d at 287, 725 N.E.2d 639 ("The commission is the exclusive evaluator of weight and credibility, and as long as some evidence supports the commission's decision, reviewing courts must defer to its judgment"); *Athey*, 89 Ohio St.3d at 475, 733 N.E.2d 589 (same). Overall, the majority finds that the evidence presented in the Kimrey affidavit persuasively contradicts the evidence relied on by the commission. Putting aside Jackson Tube's failure to present this evidence at the hearing, we have held numerous times that "[w]here a commission order is adequately explained and based on some evidence, *even evidence that may be persuasively contradicted by other evidence of record*, the order will not be disturbed as manifesting an abuse of discretion." (Emphasis added.) *State ex rel. Mobley v. Indus. Comm.*, 78 Ohio St.3d 579, 584, 679 N.E.2d 300 (1997); *see also State ex rel. Metz v. GTC, Inc.*, 142 Ohio St.3d 359, 2015-Ohio-1348, 30 N.E.3d 941, ¶ 20. The majority does not follow this clear law.

{¶ 37} Finally, I disagree with the process used—or, more accurately, not used—by the majority in the creation of a new rule for the impossibility defense. The syllabus paragraph states that to establish impossibility as an affirmative defense, an employer must show "(1) that it would have been impossible to comply with the specific safety requirement or that compliance would have precluded performance of the work and (2) that no alternative means of employee protection existed or were available." The majority adopts the rule from federal case law concerning violations of federal workplace-safety rules. At no point was this rule

or federal case law proposed or considered by the parties, the commission, or the appellate court. Jackson Tube has not asked for this rule in its brief; Thompson did not file a brief in response; and we have not held oral argument in this case. In light of this, it is unwise for us to announce a new rule of law in this case when there is no need to do so.

{¶ 38} For these reasons, I respectfully dissent.

DeWine and DeGenaro, JJ., concur in the foregoing opinion.

_____

Coolidge Wall Co., L.P.A., David C. Korte, Michelle D. Bach, and Joshua R. Lounsbury, for appellant.

_____